JOSEPH DYAR & others, in equity *vs.* FARMINGTON VILLAGE CORPORATION & others.

Franklin.    Opinion April —, 1878.

*Taxation. Railroads. Village Corporation. Legislative powers.*

A tax, assessed for public purposes, cannot constitutionally be imposed upon a portion only of the real estate of a town, leaving the remainder exempt.

A legislative act, authorizing a village corporation to levy a local tax upon the real estate of its municipality for public purposes—thus imposing a local tax for general and public purposes upon the real estate of one part of a town, leaving the other part untaxed—transcends the power of the legislature, and is unconstitutional and void.

The constitutional provision, requiring that "all taxes upon real estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof," cannot be evaded by first creating the territory to be taxed into a territorial corporation for a local purpose, and not separated from the rest of the town, nor relieved from any portion of the taxes to which it was liable in common with all the other real estate of the

town. So long as such territory remains a component part of the town, and liable to taxation for all purposes for which the remainder of the town is taxed, it cannot be separately taxed for public purposes.

Taxation in aid of railroads is taxation for a public purpose, and on this ground alone its constitutionality is sustainable. Taxation, for local purposes such as the building of drains, sewers, and the like, should be assessed upon the property thereby benefited, and in proportion to the benefits thereby conferred. For the first, the assessment is to be on the basis of valuation ; for the latter, on the basis of benefits conferred.

BILL IN EQUITY.

The petitioners allege that they are inhabitants of the town of Farmington, and residents in that part of said town included within the limits of the "Farmington Village corporation," and owners of property therein subject to taxation for certain specified purposes set forth in the act of incorporation, approved February 24, 1860, to which act they refer and produce in court. That by an act of the legislature of the state of Maine, passed February 1, 1870, the Androscoggin railroad company were authorized to extend their railroad from some point on the westerly side of Sandy river, in said Farmington, to some point within the limits of the said Farmington Village corporation, in said town.

That the legislature, by an act approved February 1, 1870, authorized said Farmington Village corporation, by a two-thirds vote of the legal voters of said corporation, at a meeting duly called for that purpose, to raise by tax or loan such sums of money as said corporation may deem expedient, not exceeding the sum of thirty-five thousand dollars, and appropriate the same in such manner and on such terms as said corporation may determine, to aid in the extension of ,the railroad now operated by the Androscoggin railroad company, within or near the limits of said Village corporation, and empowered and authorized it to make such contracts with said railroad company for the purpose aforesaid, and to raise money by tax or loan to carry such purpose into effect ; and the assessors and treasurer may be authorized by vote to issue the scrip of said corporation, not exceeding the sum of thirty-five thousand dollars, payable in such number of years as said corporation may determine. That at a meeting of the Farmington Village corporation held on the twenty-fifth day of February, 1870, it was voted "to aid in the extension of the rail-

road operated by the Androscoggin railroad company, and to raise by loan the sum of thirty-five thousand dollars and appropriate the same, or so much thereof as shall be necessary to procure said extension, and that Francis G. Butler, Hannibal Belcher and Samuel Belcher, be authorized and directed for and in behalf of the corporation, to contract with said railroad company for said extension, its future operation and maintenance, and for the erection of all suitable buildings in such manner and upon such terms as they shall deem equitable and for the interests of the corporation, and to apply so much of the loan herein provided for as may be required to carry said contract into full effect;" and at the same time it was voted by said Village corporation, "to authorize and direct the assessors and treasurer to issue the scrip of the corporation in the manner provided by law, to an amount not exceeding the sum of thirty-five thousand dollars; the principal of said scrip to be made payable as follows: Fifteen thousand dollars in ten years, five thousand dollars in fifteen years, five thousand dollars in twenty years, five thousand dollars in twenty-five years, and five thousand dollars in thirty years from the first day of July, 1870, with interest semi-annually from said July 1, 1870." It was further voted at said meeting of said Farmington Village corporation, "that the assessors and treasurer (thereof) be authorized and directed to deliver said scrip to said Francis G. Butler, Hannibal Belcher and Samuel Belcher, in such sums and parcels as they may require, taking their receipts therefor, and that the said Butler, H. Belcher and S. Belcher, be authorized and directed to sell and dispose of the same for the purpose of fulfilling any contract or contracts they may make with said railroad company."

That they are informed and believe that the said Francis G. Butler, Hannibal Belcher and Samuel Belcher, in behalf of the said Village corporation, without authority of law, entered into a contract on the fifteenth day of April, 1870, on the part of said corporation, with Oliver Moses, president of the Androscoggin railroad company, to deliver to said company the scrip of said corporation to the amount of fifteen thousand dollars, payable in ten years from July 1, 1870, with semi-annual interest coupons, as

a loan to said company, the interest and principal to be paid by said company as they become due, and to be secured to said Village corporation by a mortgage of the aforesaid extension part of said railroad by said company. And the said F. G. Butler, H. Belcher and S. Belcher, further agreed on the part and in behalf of said Farmington Village corporation, with said company, to pay it fifteen thousand dollars in addition to said loan for the extension of said railroad—one-fourth part to be paid when one-fourth part of the work should be completed, one-fourth part when one-half the work should be completed, one-fourth part when three-fourths of the work should be completed, and one-fourth part when the whole of the work should be completed.

That said Butler and Belchers further agreed, on the part of said corporation, to pay the land damages for the location and for the necessary depot buildings and grounds, not exceeding four acres of land. Thereby, in effect, contracting and agreeing on the part of said Village corporation, without authority of law, to give to said railroad corporation the sum of fifteen thousand dollars, and to pay land damages to a large amount, not yet fully ascertained, without any adequate consideration inuring to the benefit of said corporation, and without any promise or agreement on the part of said railroad corporation to refund the same or any part thereof.

The petitioners represent that they feel aggrieved by the acts and doings before stated, inasmuch as they have reason to believe and do believe, that it is the intention of the said F. G. Butler, H. Belcher and S. Belcher to receive, and of Nathan C. Goodenow, Benjamin Goodwin and L. Gustavus Voter, assessors of said Village corporation, and Joseph A. Linscott, treasurer, and their successors in office, to issue the scrip of said corporation to the amount of thirty-five thousand dollars, for the purposes herein before stated, in violation of the constitution of the state, in violation of the rights of individuals to hold and enjoy their property, without the same being subject to taxation, seizure and sale, without the consent of the individual, except for such purposes as the constitution and general laws of this state authorize,—which acts done and contemplated are without authority of law.

They pray that an injunction may issue enjoining said Farmington Village corporation, and particularly said Nathan C. Goodenow, Benjamin Goodwin and L. Gustavus Voter, assessors of said corporation, and Joseph A. Linscott, treasurer of said corporation, from signing and issuing any scrip or securities of said corporation for the purposes aforesaid, and said F. G. Butler, Hannibal Belcher and Samuel Belcher from negotiating any of the scrip or securities of said corporation, or any part thereof, issued or to be issued, for the purposes aforesaid, and from carrying out the provisions of the contract entered into by them on the part of the said corporation, on the fifteenth day of April, 1870. And that the said Androscoggin railroad company, the president and directors thereof, and the Maine Central railroad company, the president and directors thereof, lessee of said Androscoggin railroad company, be enjoined from enforcing, or attempting to enforce, against said corporation the contract entered into on the part of said corporation by the said F. G. Butler, H. Belcher and Samuel Belcher, on the said fifteenth day of April, 1870,—said contract being without authority of law, inequitable and unjust to individuals, and more particularly to your petitioners, as they most conscientiously believe, etc.

The bill is dated August 8, 1872, and filed in clerk's office August 12, 1872.

The answer, made September term, 1872, is that all the acts done or proposed to be done by these defendants, including all votes passed and meetings held, are in strict conformity to the powers and authority conferred upon them by the legislature of this state ; that they have acted and propose to act only under the provisions of law ; they refer to chapters 291 and 292 of special laws of 1870, and chapter 392 of special laws of 1860, and other laws.

That the contract entered into between the Farmington Village corporation and the Androscoggin railroad company ; that the signing and issuing of all bonds or scrip by the officers of said Farmington Village corporation and delivery of the same to Francis G. Butler, Hannibal Belcher and Samuel Belcher, the committee of said corporation ; that the negotiation and sale of

said bonds or scrip by said committee have all been done agreeably to the directions and instructions of the legal voters of said Farmington Village corporation, at a legal meeting thereof, called for the express purpose of considering and acting upon said questions and matters ; That the said meeting was attended by nearly all the legal voters of said Farmington Village corporation, all the questions and matters acted upon were fully discussed and understood, and the votes giving the directions and instructions above named were nearly unanimous, more than two-thirds of the legal voters in said Farmington Village corporation voting therefor, some of the complainants in the complaint now pending voting with the majority.

That all the acts done, or proposed to be done, by the said officers and committee of said corporation, have been done, and are proposed to be done, in strict conformity with the votes of said corporation at a legal meeting thereof called for the purpose, and that in nothing have they transcended, or do they propose to transcend the authority and instructions given them by the said Farmington Village corporation.

That, of the thirty-five thousand dollars in bonds or scrip authorized by said Farmington Village corporation, at the meeting aforesaid, to be signed and issued, &c., twenty thousand dollars have been issued and negotiated ; that the balance of fifteen thousand dollars authorized to be issued and loaned to the Androscoggin railroad company has not been and will not be issued, said railroad company not desiring the loan.

That the sum of fifteen thousand dollars has been paid to the Androscoggin railroad company ; a portion of the land damages paid, and the balance soon to be adjusted ; and it is believed the bonds or scrip issued are adequate to pay them ; the said scrip or bonds having been already negotiated for that purpose ; that the Androscoggin railroad company have extended their railroad into the precincts of said Farmington Village corporation, have therein made convenient depot grounds, put up commodious depots, commenced running their trains to their depots in said corporation by the time agreed upon, and have continued so to maintain their road and run their trains from said date hitherto.

That the contract entered into between the Farmington Village corporation and the Androscoggin railroad company was executed on the fifteenth day of April, A. D. 1870 ; that the sum to be paid by the Farmington Village corporation to the company is wholly paid, and the land damage, amounting to less than five thousand dollars, mostly paid ; that said railroad company by the terms of their contract are to maintain their road and run their trains into said Farmington Village corporation in the future ; that the contract is nearly completed between the parties, except that part of it which binds the said railroad company to maintain their road and run their trains to said corporation limits in the future ; that the extension of the road and running of trains into its limits has increased the business and enhanced the value of the property in said Farmington Village corporation, has promoted the comfort and convenience of all its inhabitants and gives them promise of future prosperity and success.

That but for the contract entered into between the said Farmington Village corporation and said Androscoggin railroad company, and the paying to said railroad company the sum of fifteen thousand dollars and the land damages as specified in said contract the said railroad company would not have extended their railroad nor performed any of the acts to be by them performed as stipulated in said contract ; that the said contract is very favorable to the said Farmington Village corporation ; that said corporation could not afford to release said railroad company from its promise and contract to maintain its road and run its cars to their new depots for a much larger sum than said corporation has already paid, and agreed to pay. And so said defendants say that no gift has been made by said Farmington Village corporation to said railroad company, nor was any gift promised by the terms of said contract ; but on the contrary said Farmington Village corporation have received and are receiving full and adequate compensation and payment for all moneys or other things by them paid or to be paid under the provisions of said contract, etc.

*C. J. Talbot & H. L. Whitcomb,* for the plaintiffs.

*S. Belcher,* for Farmington Village corporation, in an elaborate

brief of much research, cited, *Morse* v. *Water Power*, 42 Maine, 119. *Miller* v. *Whittier*, 33 Id. 521. *Brewer* v. *Springfield*, 97 Mass. 152. 1 Story Eq. Juris. § 33. *Lord* v. *Charlestown*, 99 Mass. 208. *Miller* v. *Geardy*, 13 Mich. 540. *Jones* v. *Newark*, 3 Stockton, Ct. 452. Kerr Inj. 6, 7, 339, note. Dillon Munic. Corp. 401, 402, §§ 415-116. *Talcott* v. *Township of Pine Grove*, 1 Bench & Bar. (N. S.) 1872. *Olcott* v. *Fond du Lac Co.*, Legal News, May 17, 1873. *Bank* v. *Augusta*, 49 Maine, 507. *Dixfield* v. *Newton*, 41 Id. 221. *Peabody* v. *Flint*, 6 Allen, 57. *Johnson* v. *Thorndike*, 56 Maine, 32. Stat. 1864, c. 239, § 1. 2 Kent Com. § 275. *Ex parte* Gulf R. R.*, 6 Am. 725, and cases. Dillon Corp. § 1041, and cases. *Stewart* v. *Polk Co.*, 1 Am. 238. 10 Wis. 351.

WALTON, J. This is a bill in equity asking the court to enjoin the Farmington Village corporation from the assessment of a tax to pay in part for an extension of the Androscoggin railroad. We think the injunction prayed for should be granted.

One portion of the real estate of a town cannot be burdened with a tax from which the remainder is exempt. We use the word tax in its legal sense, meaning an assessment for a public purpose. Assessments for local improvements, such as drains and sewers and the like, are not, properly speaking, taxes. Of such assessments we shall speak hereafter. We now confine ourselves to taxes proper, meaning assessments for public purposes. And we repeat, that in this state such a tax cannot be constitutionally imposed upon a portion only of the real estate of a town, leaving the remainder exempt. So held in *Brewer Brick Company* v. *Brewer*, 62 Maine, 62. It was there decided that to exempt any portion of the real estate of a town from taxation would violate that provision of our constitution which declares that all taxes upon real estate shall be apportioned and assessed equally, according to its just value. Art. 9, § 8. In that case the portion to be exempted was specified, while in this the portion to be taxed is specified. But this difference is unimportant. It cannot be material whether the exempt or the non-exempt portion is the one mentioned. The result is the same. One portion is taxed and the other is exempt. Or, to speak with entire exactness,

one portion has an additional tax placed upon it from which the remainder is exempt. And it is this result—this inequality of taxation—that renders the proceeding unconstitutional. It is upon this ground that the decision referred to rests. And the decision in the case cited was affirmed in *Farnsworth Company* v. *Lisbon*, 62 Maine, 451.

If five lots of land—and the Farmington Village corporation consists of no more—may be burdened with a tax from which the remainder of the real estate of the town is exempt, no reason is perceived why one lot, or a less quantity even, may not be burdened in the same way. And if a small tax may be laid upon it, of course a large one may. There can be no limit to the amount. And if the legislature may authorize the imposition of such a tax, provided a majority or two-thirds of the legal voters residing upon the territory consent, it may do so without such consent. Such consent, if it ought, in justice, to bind those who vote yes, should not affect those who vote no, and especially the women and children and non-residents, who have no right to vote at all. The constitution does not place their property at the disposal of their neighbors. The question is one of power, not how the power shall be exercised. If such a tax may be imposed to build a railroad, of course a like tax may be imposed to build an ordinary highway or bridge, or for any other public purpose. We then have this result, that for a public purpose any one parcel of real estate, or any number of parcels, may, at the will of the legislature, be selected and burdened with a tax, to the extent of its entire value, from which the adjoining real estate in the same town is wholly exempt. Does our bill of rights, and especially that clause of the constitution which declares that all taxes upon real estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof, allow of such a result? We think not. The conclusion shows that the premises must be wrong.

We attach no importance to the fact that in this case the territory to be taxed was first created into a tertitorial corporation. It was not thereby separated from the town of Farmington, nor relieved from any portion of the taxes to which it was liable in

common with all the other real estate of the town. If the proposed tax is assessed, it will be a tax in addition to all other public taxes. The constitutional provision requiring equality cannot be evaded by first declaring the territory, on which an additional tax is to be laid, a corporation. If it could be thus evaded the provision would be absolutely valueless. Such an act of incorporation could always be passed. The objection to such a tax lies deeper than to the ways or means or agencies by which it is to be imposed. It rests upon the want of constitutional power in the legislature, through any agencies, or by any means, to create such an inequality of taxation. Such a power would be the full equivalent of a power to confiscate. Private property would no longer be under the protection of the constitution; it could only be held at the pleasure of the legislature. Such a power is denied to the legislature, even in states where no constitutional limitation upon the taxing power exists.

"There is no case to be found in this state, nor, as I believe, after a very thorough search, in any other—with limitations in the constitution or without them—in which it has been held that a legislature, by virtue merely of its general powers, can levy, or authorize a municipality to levy, a local tax for general purposes. . . . It matters not whether an assessment upon an individual, or a class of individuals, for a general, and not a mere local, purpose, be regarded as an act of confiscation, a judicial sentence or rescript, or a taking of private property for public use without compensation; in any aspect, it transcends the power of the legislature, and is void." Per Sharswood, J., in *Hammett* v. *Philadelphia*, 65 Pa. St. 146.

"A legislative act, authorizing the building of a public bridge, and directing the expenses to be assessed on A, B and C, such persons not being in any way peculiarly benefited by such structure, would not be an act of taxation, but a condemnation of so much of the money of the persons designated to a public use." Chief Justice Beasley, in *Tidewater Co.* v. *Carter*, 3 C. E. Green, 518.

"It would be wholly beyond the scope of legislative power to authorize a municipality to levy a local tax for general purposes.

. . . . A law which would attempt to make one person, or a given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise of the taxing power, but an act of confiscation." Wagner, J., in *McCormick* v. *Patchin*, 53 Mo. 33.

Similar expressions in condemnation of the attempts which have been made from time to time to impose local taxes for a public purpose, could be multiplied almost indefinitely; and in some of the cases much stronger expressions are used; but we forbear to quote them; for, after all, the strength of an argument must depend, not upon the number of times it is repeated, nor upon the violence of the language used, but upon the soundness of the reasoning employed.

The result of all the cases is that, a local tax (by which term is meant a tax assessed upon a community or a territory which is less than that on which the general assessment for other public purposes are made) cannot be made for a public purpose; because, as already stated, such a power would be the full equivalent of a power to confiscate; which, in this country, is nowhere conceded to the legislature, not even in those states where there are no constitutional limitations upon the taxing power. *A fortiori*, such a power cannot exist, where, as in this state, there is an express limitation upon the taxing power of the legislature, intended to guard against the possibility of such oppressive legislation.

And we wish again to repeat, that no importance should be attached to the fact that the community or territory to be taxed is first created into a territorial corporation for some local purpose; as, for instance, in this case, to provide the means of extinguishing fires and establishing a local police. So long as it remains a component part of the town, and remains liable to taxation for all purposes for which the remainder of the town is taxed, it cannot be separately taxed for another public purpose, and we are not now speaking of assessments for local purposes. Such an act of incorporation relates only to the means—it does not affect the end. The objection is to the end; to the inequality of taxation for public purposes thereby produced, not to the machinery by which it is accomplished.

Nor must such special taxation be confounded with a distribution of the public burdens. Such a distribution has always existed. County expenses are distributed among the several counties; town expenses among the several towns; and a portion of the expenses of our public schools among the several school districts. But there are no exemptions. All are burdened alike and by the same public laws. And, although such a distribution creates temporary inequalities of taxation, these differences ultimately adjust themselves, and that degree of equality which the constitution contemplates is obtained. Not so, when, by an act of special legislation, a tax for one of these purposes, or any other public purpose, is laid upon a portion only of the territory, of a town, leaving the remainder wholly exempt. As well might a school district, after being taxed in common with all the rest of the town for highway purposes, have a special tax laid upon it to open some new highway, or to build an expensive bridge; or, after being taxed in common with all the rest of the town for the support of paupers, have the additional burden of supporting some particular pauper placed upon it. The constitution will not allow of such special taxation—the taxation of selected and limited portions of territory for a public purpose.

We now come to the inquiry whether this tax can be supported as an assessment for a local improvement. Very clearly it cannot. And for two reasons, either of which would, alone, be sufficient to defeat it.

I. It is taxation in aid of a railroad, and it has been judicially determined again and again that such taxation is for a public purpose. It is only on the ground that the purpose is public that the constitutionality of the legislation in aid of railroads has been or can be sustained. Such is the doctrine of all the well considered cases. It is said that railroads are no more than improved highways; that the burden of building and supporting highways always rested upon towns; that it is one of the purposes for which they are created; that to allow or require them to aid in the construction of railroads places no new burden upon them; that it is one of the public burdens already existing, and becomes more onerous only because the community has become more

exacting, and requires that these improved facilities for inter-communication shall be more generally enjoyed. It is therefore a sufficient answer to the inquiry whether this tax cannot be supported as an assessment for a local improvement, to say that the purpose for which it is to be assessed is public, not local, within the meaning of the law; that no tax in aid of a railroad has ever been justified or sustained upon the ground that it is an assessment for a local improvement. The courts have had much difficulty in their efforts to discriminate between local and public works, and the dividing line is but ill-defined. But all agree that taxation in aid of railroads must be justified as taxation for a public purpose or it cannot be justified at all.

II. Another fatal objection is this : Reason as well as authority dictates that taxation for local purposes, such as the building of drains and sewers and the like, should be assessed upon the property thereby benefited, and in proportion to the benefits thereby conferred upon it. This question was very fully considered in *Hammett* v. *Philadelphia*, 65 Penn. St. 146 ; Am. Law Reg. for July, 1869, 411; and it is there stated as the result of all the authorities that assessments for local improvements can only be constitutional when imposed for improvements clearly conferring special benefits upon the property assessed, and to the extent of those benefits ; that an assessment upon an individual for a local improvement which is not grounded upon and measured by the extent of his particular benefit, would be clearly unconstitutional and void. To hold otherwise would sanction the doctrine that one man may be made to pay another's debt—to pay for improvements, not upon his own estate, but upon another's. As well might A be compelled to pay for B's house, as for a drain, or other local improvement, alone beneficial to it.

If this tax is assessed, it must, by the terms of the act authorizing it, be assessed upon the basis of valuation, and not upon the basis of benefits conferred. It will be laid upon all the taxable property within the limits of the village corporation, whether the extension of the railroad was beneficial to it or not. Neither the act authorizing the tax, nor the act creating the village corporation, provides for any other mode of assessment. On the contrary

the latter act requires all taxes assessed by authority of the village corporation, to be assessed in the same manner as is by law provided for the assessment of town taxes; which, as every one knows, is upon the basis of value, and not upon the basis of benefits conferred. Such an assessment, if made for a local improvement, would be clearly unconstitutional and void.

We do not mean to question the authority of the legislature to confer upon towns and cities the right to use the coercive power of taxation to raise money to build railroads. In this state the question is *res judicata*, and further discussion of it would not be profitable. But it may not be out of place to say that the constitutionality, as well as the expediency, of such an exercise of the taxing power, has always met with a vigorous opposition. The reasoning by which its constitutionality is maintained is not satisfactory to some of the best judicial minds of the country. In several of the states it has been rejected altogether. Unfriendly competition, wasteful expenditures of money, and an amount of municipal indebtedness that must end in repudiation or the most oppressive taxation have been the result. And, as was well remarked by Mr. Justice Barrows, in his reply to the legislature, 58 Maine, 612, "the fact that one step of doubtful propriety has been taken is never a good reason for taking another in the same direction; but rather, on the contrary, it should induce us to pause and revert to fixed principles."

Nor do we mean to say that for public purposes the state may not be divided into districts and the public burdens distributed among them. Nor do we mean to say that for local purposes these public districts may not be again divided and separately assessed for local improvements. What we mean to say is that one public district cannot be created within another, nor be allowed to overlap another, so that for the same public purpose, or for any other public purpose, one portion of the real estate is taxed twice, while the remainder is taxed only once; that local assessments for local improvements cannot be laid upon the basis of valuation alone, without regard to benefits. This tax, if viewed as an assessment for a public purpose (as it undoubtedly is) violates the first rule; if viewed as an assessment for a local

improvement, it violates the second. We think it is therefore clear, that it cannot be constitutionally assessed, and that the injunction prayed for must be granted.

*Injunction granted, as prayed for.*

LIBBEY, J., having been of counsel in the case, took no part in the decision. DICKERSON, J., had the opinion in his possession for examination at the time of his death, and it is not known whether he concurred or not. APPLETON, C. J., VIRGIN and PETERS, JJ., concurred.