INHABITANTS OF SANDY RIVER PLANTATION

*vs.*

WESTON LEWIS AND JOSIAH S. MAXCEY.

Franklin.    Opinion November 13, 1912.

*Assessors.  Assessment.  Clerk of Plantation.  Constitution.  Debt.  Defects.*
*Exceptions.  Forfeiture.  Jurisdiction.  Meeting.  Qualification.*
*Revised Statutes, Chapter 4, Section 27.  Record.  Tax.*
*Laws of 1910, Chapter 193, Section 6.*

1. This is an action of debt, to recover taxes assessed against the property of the defendants in the year 1910 by the assessors of Sandy River Plantation, in which assessment is included the Forestry District tax for that year.

2. This is an action at law to recover the tax, and not a proceeding seeking to enforce a forfeiture for its non-payment, and that an action for the recovery of a tax assessed will not be defeated by any mere irregularity, but only by such omission or defects as go to the jurisdiction of the assessors, or deprive the defendant of some substantial right, or by some omission of an essential prerequisite to the bringing of the action.

3. It is objected that there is no evidence of the legal election or qualification of the assessors of said plantation for the year 1910, because the book of record, which purported to show their election, had been mutilated and pages upon which the record of the annual meeting for 1910 had been attempted to be made, had been cut out, and the record introduced as the record of that meeting was made in February, 1911.

4. The fact that it was not made until February, 1911, did not affect its validity. The clerk could make the record of the meeting at any time during the year following his election.

5. It is objected that the record fails to show a legal qualification of the assessors. The record states that J. L. Clark was chosen first assessor by ballot, and duly qualified. The record states the same as to the other two assessors, except it states that S. H. Learned was chosen second assessor and C. S. Marden third assessor. The only act that either of them could do, and should do, to qualify them as assessors was to take the oath of office, and the record says they duly qualified.

6. The words of the record, showing that they each, naming them, duly qualified, is at least prima facie evidence that they were sworn as required by law, and nothing appearing in the case to overcome that presumption, that they were authorized to perform the duties of assessors.

On exceptions by defendant. Overruled.

This is an action of debt, to recover taxes assessed against the property of the defendants in the year 1910, by the assessors of Sandy River Plantation, in which assessment is included the Forestry District tax for that year. Plea, general issue with brief statement, namely:

1. That said assessors were not legally elected or legally qualified as such.

2. Said tax is illegal in whole or in part.

3. Said assessors had no legal right or lawful authority to assess said tax and commit the same prior to the first day of July, 1910.

4. Said assessors have included in said assessment a Forestry District tax which they had no right to include in said assessment.

5. Said Forestry District tax is unconstitutional and illegal.

6. That payment of said tax was never legally demanded.

At the conclusion of the testimony, the presiding Justice directed a verdict for the plaintiff for the amount of the tax sued for and interest thereon from date of demand, May 30, 1910, and the defendants excepted to the directing of said verdict.

The case is stated in the opinion.

*Elmer E. Richards,* for plaintiff.

*Frank W. Butler,* for defendants.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

HALEY, J. This is an action of debt, to recover taxes assessed against the property of the defendants in the year 1910 by the assessors of Sandy River Plantation, in which assessment is

included the Forestry District tax for that year. At the close of the testimony the presiding Justice directed a verdict for the plaintiff, for the amount of the tax sued for, and interest thereon from the date of demand, May 30, 1910, and the defendants bring the case to this court upon exceptions to the directing of the verdict as aforesaid.

In considering the exceptions it should be remembered that this is an action at law to recover the tax, and not a proceeding seeking to enforce a forfeiture for its non-payment, and that an action for the recovery of a tax assessed will not be defeated by any mere irregularity, but only by such omission or defects as go to the jurisdiction of the assessors, or deprive the defendant of some substantial right, or by some omission of an essential prerequisite to the bringing of the action. *Greenville* v. *Blair,* 104 *Maine,* 444; *Rockland* v. *Ulmer,* 87 Maine, 357.

1.   It is objected that there is no evidence of the legal election or qualification of the assessors of said plantation for the year 1910, because the book of records, which purported to show their election, had been mutilated and pages upon which the record of the annual meeting for 1910 had been attempted to be made, had been cut out, and the record introduced as the record of that meeting was made in February, 1911.

There is no evidence that the pages cut from the record book was the record of the annual meeting. The legitimate inference is that the writing upon the leaves cut from the book was done by a daughter of the clerk, in an attempt to make the record for the clerk to sign, but he never signed, or attested it as the record. It was found to be contrary to the facts, or wrong in some particulars, and then the record that was introduced in evidence was made as the record of the annual meeting of 1910, and the clerk testified at the trial that it was the record of that meeting, made according to the facts, and it was properly attested by him. The fact that it was not made until February, 1911, did not affect its validity. The clerk could make the record of the meeting at any time during the year following his election.

2.   It is objected that the records of the plantation do not show before whom the alleged assessors qualified, as required by chapter 4, section 27, Revised Statutes. It was held in *Hale et al* v. *Cush-*

*ing,* 2 Maine, 218, that the statute requiring such a certificate to be returned and filed, was directory, and that case has been cited with approval, although the same point was not directly involved, in *Purrington* v. *Dunning,* 11 Maine, 176; *Chapman* v. *Inhabitants of Limerick,* 56 Maine, 390, and *Farnsworth Co.* v. *Rand,* 65 Maine, 19, and is decisive of that objection.

3.   It is objected that the record fails to show a legal qualification of the assessors.   The record states that J. L. Clark was chosen first assessor by ballot, and duly qualified.   The record states the same as to the other two assessors, except it states that S. H. Learned was chosen second assessor, and C. S. Marden third assessor.   The only act that either of them could do, and should do, to qualify them as assessors was to take the oath of office, and the record says they duly qualified.

In *Edwardson* v. *Garnhart,* 56 Mo., 81, the court held, "That a recital in a referee's report that he had been duly qualified is at least prima facie evidence that he has been sworn as the statutes require." In *Hale* v. *Seltzer,* 25 La. Ann., 320, it was held: "The word qualify in its legal use means to take an oath to discharge the duties of an office." In *People* v. *McKenney,* 52 N. Y., 374, it was held: "That to qualify for an office, means to take an oath of office." *In State* v. *Neibling,* 6 Ohio State, 40, the court said "Qualified in courts imports nothing more than that the person elected has complied with the requirements of the statutes by giving bonds and taking the oath of office." In *State* v. *Abbott,* 55 Kan., 154, it was said of the word qualified: "It means to take such steps as the statute requires before a person elected or appointed to an office is allowed to enter on discharge of its duties." And in *People* v. *Palen,* 75 Hun., 289, the court held, in the language of the Century Dictionary, that the word "qualify" means *to make oath to any fact; to take the oath of office before entering upon its duties.*

We think the words of the record, showing that they each, naming them, duly qualified, is at least prima facie evidence that they were sworn, as required by law, and nothing appearing in the case to overcome that presumption, that they were authorized to perform the duties of assessors.

4.   It is objected that the assessors had no authority to commit the taxes prior to June 1, 1910, and the evidence shows that they

were committed April 21, 1910. Section 90, chapter 86, Laws of 1905, reads: "In July of each year said assessors shall commit the same with a warrant in the usual form to the collector of taxes." The law contemplates that when the taxes are committed, all things have been done by the assessors to complete the assessment, the date of the commitment to the collector has nothing to do with the validity of the assessment, and to rule that, by committing the taxes to the collector before the date named in the statute, rendered the assessment void, would be to hold that an act of the assessors that had nothing to do with the assessment, done after the assessment had been completed, would render the assessment void. The assessment was made as of April 1, 1910, and whether the assessors completed their duties in April or July would not affect the validity of the assessment, and the direction in the statute to commit the tax to the collector in July of each year was directory.

5. The next objection is that the Forestry District tax is unconstitutional, because it places a burden on all real property within the limits of the district, in addition to all other property taxes assessed throughout the State, and the case of *Dyar* v. *Farmington Village Corporation*, 70 Maine, 515, is cited as sustaining that position. In that case the Legislature authorized the Farmington Village Corporation, by a two-thirds vote of the voters of said corporation, to raise, by loan or taxation, $35,000 to aid in building a railroad, and the act was held unconstitutional, because it was unconstitutional to impose local taxes for public purposes, and it was held that a railroad was for public purposes. The doctrine of that case cannot be questioned, but it recognizes the doctrine contended for by the plaintiff in this case, that taxation for local purposes by assessments upon property benefitted, and in proportion to the benefits conferred upon it, are valid. The forestry tax was not a tax for public purposes, but for the special benefit of the forest lands within the district. Section 6, chapter 193, of the Laws of 1911, provide that, "the taxes assessed by authority of this act shall be held by the State Treasurer as a fund to be used to protect from fire the forests situated upon and within the district hereby created, and to pay expenses incidental thereto, and for no other purpose." "The forests," as said in the preamble to the act, "are

one of the chief sources of wealth of the state, and the protection
of such forests from destruction by fire is of the greatest impor-
tance; to this end it is the paramount duty of the legislature to have
funds provided without delay for such protection." With that
end in mind the Legislature created the Forestry District, and
authorized this tax, provided for fire wardens, deputy fire wardens,
and watches to be kept of the forests, and authorized the summon-
ing and paying of help for the extinguishment of fires in the dis-
trict, and provided that the tax should be used for that purpose and
for no other purpose. It was, a tax for a local purpose, and, as far
as the case shows, was assessed according to the maxim that, "he
who receives the advantage ought to sustain the burden." Land
within this district had special benefits that no other forest land in
the State had, and it ought to bear the burdens caused by the
receipt of those special benefits.

It is objected that the assessors had no authority to assess or
collect any part of the forestry district tax, because, by the act
creating the district, it is made the duty of the state assessors to
assess the tax and the State Treasurer to collect it. By chapter 193
of the Laws of 1905, an administrative district was established and
incorporated, known as the Maine Forestry District, its purpose
and object being the protection from fire of the forests within that
district. The act creating the district specified the lots and planta-
tions included in the district, and fixed the rate of taxation for all
land in the district, which was to be in addition to the general tax
upon all property within the State, and it is admitted that the
property upon which the forestry tax was assessed was within
that district and owned by the defendants, and no question is raised
but that the state assessors performed their duty in assessing the
property, as required by law. But it is urged that the only pro-
ceedings by which the tax properly assessed could be collected was
by a forfeiture of the land taxed, as provided by section 5. Sec-
tion 4 of said act provides that the treasurer shall cause lists of
the assessments of said lands to be advertised for three weeks in
papers specified, and section 5 provides that if the tax is not paid
within the time limited, the land shall be held forfeited to the State,
and vests therein free of any claim by any former owner, and
defendants claim that the tax can be collected in no way except

that provided by section 5. But section 65, chapter 10, R. S., provides: "In addition to other provisions for the collection of taxes legally assessed, the mayor and treasurer of any city, the selectmen of any town, and the assessors of any plantation, to which a tax is due, may, in writing, direct an action to be commenced in the name of such city, or the inhabitants of such town or plantation, against the party liable."

As stated above, it is not questioned but that the tax was legally assessed and due; but it is claimed that it was not due the plantation within the meaning of section 65, chapter 10, R. S. This section was construed by the court in *Rockland* v. *Ulmer,* 84 Maine, 503, in which it was held that the State and county tax which, at the time of the assessment, the collector was bound to pay when collected, direct to the county and State, was due the municipality within the meaning of that statute.

If the general State, and county tax, which do not belong to the municipality, are due the municipality, within the meaning of the statute, why are not the taxes of the fire district due the municipality? It was held in the above case that, "The municipality was the agency through which said State and county taxes were assessed and collected. Viewing the municipality in the light of an agent or trustee of the public, all the taxes to be assessed and collected through its agency, may be said to be 'due' to it as such agent or trustee. The right of action against the delinquent inhabitant, or property owner, was given to the municipality to enable it to perform its duties as such agents or trustees. We think the State and county taxes assessed upon the municipality, are within the preview of the statute granting this relief."

If the municipality could act as the agent of the State in collecting the State tax, why could it not act as the agent of the State in collecting the fire district tax? The last named tax was included in the treasurer's warrant to the assessors of the plaintiff town, and thereby the tax, by the doctrine of *Rockland* v. *Ulmer,* supra, was committed to the plantation to collect for the benefit of the fire district, to be paid direct to the State.

The objections above considered are all that are urged in behalf of the exceptions. We do not consider them of sufficient weight to sustain the exceptions, and the mandate should be,

*Exceptions overruled.*