**INHABITANTS OF the TOWN OF STONINGTON et al.**

v.

**INHABITANTS OF the TOWN OF DEER ISLE et al.**

Supreme Judicial Court of Maine.

July 5, 1979.

Preti, Flaherty & Beliveau by Gerald F. Petruccelli (orally), Portland, for plaintiffs.

Hawkins & McCloskey by Sarah McCloskey (orally), David W. Hawkins, Deer Isle, for Inhabitants of Town of Deer Isle, et al.

Waldemar G. Buschmann, Asst. Atty. Gen., Augusta, for State of Maine, et al.

Before McKUSICK, C. J., POMEROY, WERNICK and ARCHIBALD, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

Plaintiff Town of Stonington appeals from the summary judgment entered by the Superior Court (Hancock County) in favor of defendant Town of Deer Isle.[1] Stoning-

_____

1. The original complaint filed on July 18, 1978, also listed as named plaintiffs certain individuals resident in Stonington who purported to sue, as selectmen, on behalf of the Town and, as property owners and taxpayers, in their individual capacities and as representatives of the

ton contends that the Superior Court erred in holding that the arrangement voted by both towns for sharing on a per-pupil basis the total costs of operating the Stonington-Deer Isle Community School District (CSD) did not violate Article IX, § 8 of the Maine Constitution. We agree with the Superior Court and accordingly deny the appeal.

### Facts of the Case

On October 23, 1973, special town meetings were held in both Stonington and Deer Isle for the purpose of deciding whether the towns would form a community school district as authorized by 20 M.R.S.A. § 351–365 (Supp.1978). Both towns voted to approve the creation of the Stonington-Deer Isle Community School District. At the same meetings, both towns accepted by over-

whelming votes[2] the per-pupil sharing of costs that is legislatively permitted by 20 M.R.S.A. § 361.[3] That per-pupil sharing of costs between the two towns is to be contrasted with the allocation under 20 M.R.S.A. § 355 (which apparently would apply in absence of the towns' vote at the time of organizing the CSD) by which each town would be responsible for "an amount in proportion to the total sum required each year [to operate the CSD] as that town's state valuation bears to the total state valuation of all the participating towns."

The first budget for the Stonington-Deer Isle CSD provided for the period from November 10, 1973, through December 31, 1973. The next budget covered the interval between January 1, 1974, and June 30, 1974. For both budget periods all operating ex-

---

class of all property owners and taxpayers of Stonington. Since the Town of Stonington itself was a proper party plaintiff and since in any event the Superior Court ordered judgment against plaintiffs on the merits of their claim, we have no occasion to decide whether those individuals were properly joined as plaintiffs.

In addition to the Inhabitants of the Town of Deer Isle, the original complaint named as defendants the State of Maine, the Commissioner of the State Department of Educational and Cultural Services, the Deer Isle-Stonington Community School District, the individual trustees of the community school district, and the selectmen of the Town of Deer Isle. Pursuant to Rule 21, M.R.Civ.P., the Superior Court ordered that the State of Maine be dismissed as a party defendant, properly noting that even if the cost-sharing arrangement were subsequently held unconstitutional, complete relief could be accorded to plaintiffs without the presence of the State of Maine as a party to the case. Of course, the State of Maine was entitled to present evidence and argument if it so desired, since the constitutionality of a statute affecting the public interest was drawn in question. Rule 24(d), M.R.Civ.P.

2. The Stonington-Deer Isle CSD was organized as a "new district" subsequent to March 28, 1973, when P.L.1973, ch. 132 became effective as an emergency measure. That emergency measure required that there be submitted to the town meetings called to consider formation of a new district an article reading substantially as follows:

"To see if the town will vote to accept the provisions of sections 360–C to 365 of Title 20 which shall determine the method of sharing costs and the method of budget approval of the community school district." 20 M.R.S.A. § 360–A (Supp.1978), enacted by P.L.

1963, ch. 132, § 3, carrying forward a similar provision enacted by P.L.1962, ch. 567, § 1 (eff. Feb. 8, 1972).

Section 361 of Title 20 provides for the sharing of costs on a per-pupil basis. See n. 3 below. By a vote of 314 to 44, the Stonington voters approved that article, thus adopting the per-pupil cost-sharing arrangement. The affirmative vote in Deer Isle was 401 to 12.

3. 20 M.R.S.A. § 361 (Supp.1978), "Sharing Costs," enacted by P.L.1972, ch. 567, § 3, eff. Feb. 8, 1972, provides in full:

"Any community school district organized after February 1, 1972, *may share the costs among the member municipalities on the basis of the number of resident pupils in each municipality on October 1st in the year preceding the budget meeting* if the education of those pupils is the responsibility of the community school district. When a budget has been approved for the community school district in accordance with section 362, *the gross amount shall be allocated to each member municipality on the basis of the number of pupils in each municipality as cited above.* From the gross budget allocated to each municipality shall be deducted the state aid earned by that municipality because of the pupils in the community school district, and any other incomes of the district shall be allocated to each municipality on the basis of the cost-sharing method cited above and shall also be deducted. The net amount, after subtracting subsidy and other incomes from the gross allocation of each municipality, shall be assessed to each municipality in accordance with the applicable provisions of section 355." (Emphasis added)

penses were apportioned between the two participating towns on the basis of their respective number of pupils attending CSD schools. From July 1, 1974, through June 30, 1978, however, CSD expenses were allocated between the two towns largely on the basis of the Uniform Property Tax Law. The remaining portion of the CSD budget that was not covered by the Uniform Property Tax Law (e. g., funds for adult education and "leeway" discretionary funds) was allocated between the towns on the basis of the per-pupil cost-sharing arrangement accepted by both towns at the time the district was formed in October 1973. Thus, the cost-sharing arrangement never lapsed entirely, although the scope of budget items covered by it was greatly contracted during the period in which the Uniform Property Tax Law was in effect.[4]

The Uniform Property Tax Law was repealed by popular vote in a statewide referendum in December 1977.[5] For the fiscal year commencing July 1, 1978, the Stonington-Deer Isle CSD proceeded to allocate its entire budget between the two participating towns on the basis of the per-pupil cost-sharing arrangement of 1973. After protest, the Town of Stonington brought the present suit asking the Superior Court to declare both the per-pupil cost-sharing arrangement and 20 M.R.S.A. § 361 unconstitutional,[6] to enjoin the enforcement of the cost-sharing arrangement, and to order the Town of Deer Isle to reimburse the Town of Stonington for the excess costs allegedly charged to Stonington during the preceding six years.[7]

On February 26, 1979, the Superior Court upheld the constitutionality of the cost-sharing arrangement and entered summary judgment for defendants. Stonington filed a timely notice of appeal to this court.

### Constitutionality of the Cost-Sharing Arrangement

■ At the time the towns of Stonington and Deer Isle entered into their per-pupil cost-sharing arrangement, Article IX, § 8 of the Maine Constitution provided that "[a]ll taxes upon real and personal estate, as-

4. Before the Superior Court the Town of Stonington argued that the passage of the Uniform Property Tax Law effected an implied repeal of the cost-sharing arrangement between Stonington and Deer Isle, and of the statute, 20 M.R.S.A. § 361, which authorized the towns' adoption of that arrangement. The trial justice rejected this argument. On appeal Stonington has not pressed that repealer argument.

5. On February 2, 1978, the Attorney General issued an opinion to Deputy Commissioner James Vickerson of the State Department of Educational Services advising him that 20 M.R.S.A. § 305 (Supp.1978), which authorized cost sharing partially on a per-pupil basis in school administrative districts (SADs), might prove unconstitutional when measured against the requirements of Article IX, § 8 of the Maine Constitution. The Deputy Commissioner, however, advised school superintendents to continue to enforce cost-sharing arrangements in both CSDs and SADs until such time as the Law Court ruled on the issue of their constitutionality, or until the issue was settled by a constitutional amendment.

6. There are currently twelve CSDs in Maine that allocate costs exclusively on a per-pupil basis and twelve SADs and one CSD that have cost-sharing formulas based on a combination of property valuation and per-pupil costs.

7. On December 7, 1978, Governor Longley issued a proclamation that Article IX, § 8 of the Maine Constitution had been amended by a popular vote of the people of the State of Maine. Prior to the amendment, Article IX, § 8 provided in the part here relevant:

"All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof; . . . ."

The 1978 amendment added the following language to Article IX, § 8:

"The Legislature shall have the power to provide that taxes which it may authorize a School Administrative District or a community school district to levy, may be assessed on real, personal and intangible property in accordance with any cost-sharing formula which it may authorize."

This amendment does not, however, render moot plaintiffs' complaint in the case at bar, which seeks injunctive and monetary relief relating to allocations made prior to December 5, 1978. Since the language of the amendment does not expressly provide for its retroactive application, it can be given prospective application only. It remains for us to decide whether the cost-sharing arrangement authorized by 20 M.R.S.A. § 361 conflicts with the constitutional prohibition contained in Article IX, § 8 as that provision read prior to the 1978 amendment.

sessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof; . . . ." Stonington points out that the cost-sharing arrangement entered into between the two towns pursuant to 20 M.R.S.A. § 361 operates so as to require taxpayers in Stonington to bear a heavier tax burden than the tax burden borne by taxpayers in Deer Isle. In 1978 the state valuation of all taxable property in Stonington was $20.25 million, whereas in Deer Isle it amounted to $29.75 million. While the average number of pupils residing in the Town of Stonington over the past six years has been roughly 322, the Town of Deer Isle has had to provide public education for the lesser average number of 282 students. In order to meet its per-pupil assessment in 1978, the Town of Stonington had to levy taxes at a rate of 12.80 mills. The Town of Deer Isle, however, could meet its 1978 school assessment by levying taxes at a rate of only 8.09 mills. If the CSD 1978 costs had been assessed uniformly on all property in both towns, the tax rate would have been about 10 mills. It is evident that Stonington taxpayers have in fact borne a heavier tax burden than Deer Isle taxpayers. Nevertheless, we reject the contention of the Town of Stonington that this inequality of tax burden violated the constitutional mandate of Article IX, § 8.[8]

The taxation differential between the towns of Stonington and Deer Isle property falls within the judicially recognized exception to the general constitutional prohibition of Article IX § 8 for "special purpose" taxation. Beginning with the case of *Smyth v. Titcomb*, 31 Me. 272, 286 (1850), the Law Court recognized that certain "local taxes" levied "for local benefits and improvements" such as taxes "to establish and support schools" did not fall under the prohibition of Article IX, § 8, even though

the apportionment of such taxes might be unequal. In *Smyth* the Town of Brunswick consolidated three of the town's public schools into one village school district. The town taxed all town taxpayers once to raise funds to be used for all town schools, and, in addition, the town then authorized the village school district to levy more taxes on the taxpayers within the district to raise money to be spent solely on district schools. Thus, property within the village school district was taxed more heavily then other Brunswick property located outside the bounds of the district. Taxpayers of the district complained that they were being subjected to an unconstitutionally higher tax burden than their fellow towns-people outside the district. This court upheld the taxation scheme on the grounds that the village school district tax constituted "local taxation for local benefits." Recognizing that towns had been empowered "to raise money . . . to establish and support schools," the court observed:

> "The taxation in all such cases will necessarily be local and when compared with other portions of the community unequal; yet they have been held to be constitutional and among the ordinary and most useful class of enactments." *Id.* at 286.

The court elaborated on the rationale underlying the *Smyth* decision in the later case of *Dyar v. Farmington Village Corp.*, 70 Me. 515 (1878). There the court distinguished between "local" or "special purpose" taxation on the one hand, and "public" or "general" taxation on the other. In *Dyar* the Farmington Village Corporation sought to levy a tax in order to raise funds to aid in the extension of a railroad. Holding the tax unconstitutional, this court explained that the tax did not qualify as a "local" or "special purpose" tax, since the

---

**8.** The legislature authorized towns to share school costs on a per-pupil basis within the first decade following Maine's 1819 Constitutional Convention. P.L.1827, ch. 361 provided that parts of adjoining towns or plantations could establish school districts and apportion operating costs between themselves "according to the number of children in that part of such district which may be within such respective town or plantation." This statute has been periodically amended and survives today as 20 M.R.S.A. § 521 (Supp.1978). In 1972 this law was amended to provide for apportionment of costs "in accordance with the terms of the agreement" entered into by the participating towns rather than on a per-pupil basis. P.L. 1972, ch. 611, § 8.

planned railroad would benefit the public of the entire Town of Farmington equally, and not just the residents within the bounds of the Farmington Village Corporation. Using schools as a contrary example, the court commented that truly local taxes could be assessed against a portion of a municipality provided the money raised was used to provide a special benefit, such as a local school, which would be enjoyed primarily by the taxed locality. *Id.* at 526.

Relying on a rule of proportionality between the benefit conferred and the burden imposed by a "special purpose" tax, the constitutionality of a local forestry tax was upheld in *Inhab. of Sandy River Plantation v. Lewis & Maxcey*, 109 Me. 472, 476–77, 84 A. 995, 997 (1912):

"[T]axation for local purposes by assessments upon property benefited and in proportion to the benefits conferred upon it, are valid. The forestry tax was not a tax for public purposes, but for the special benefit of the forest lands within the district. . . . It was a tax for a local purpose, and, as far as the case shows, was assessed according to the maxim that, 'he who received the advantage ought to sustain the burden'."

The court similarly upheld a district tax levied to raise money for wharves, noting that the tax was borne by those who could be expected to receive special benefits from the improvement of harbor facilities. "When the benefit and burden are reasonably proportionate, the constitutional requirement is satisfied." *Hamilton v. Portland Pier Site Dist.*, 120 Me. 15, 21, 112 A. 836, 839 (1921). *Accord, Crabtree v. Ayer*, 122 Me. 18, 21, 118 A.2d 790, 791 (1922).

Applying the doctrine of special purpose taxation to the case at bar, the question becomes: Is the higher tax burden placed on Stonington property taxpayers proportional to a greater local benefit enjoyed by the Town of Stonington and residents as a result of the higher taxation? We do not hesitate to answer this question in the affirmative.

The trial justice correctly observed that the policy of the Maine legislature has been, pursuant to the direction of Article VIII of the Maine Constitution, to impose upon towns the primary responsibility for the education of youth. Since the first days of statehood, Article VIII, § 1 has provided:

"A general diffusion of the advantages of education being essential to the preservation of the rights and liberties of the people; to promote this important object, the Legislature are authorized, and it shall be *their duty to require, the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools*; . . . ." (Emphasis added)

Although the primary responsibility for public schools rests on towns, the legislature has continually sought to lessen the financial burden on towns by permitting or requiring towns, and portions of towns, to join together to form administratively and economically more efficient units. *See, e. g., McGary v. Barrows*, 156 Me. 250, 255, 163 A.2d 747, 750 (1960). Although towns must provide funds for the support of public schools within their limits, it does not follow that the legislature is powerless to aid the towns in that endeavor. *Kelley v. Brunswick School Dist.*, 134 Me. 414, 419, 187 A. 703, 705 (1936); *Call v. Chadbourne*, 46 Me. 206, 222 (1858). Such mechanisms have permitted towns to achieve cost savings through economies of scale and to achieve a diversity of curriculum and other programs otherwise unattainable.

In the case at bar, if each of the towns of Stonington and Deer Isle operated its own separate school system, the cost to each town would presumably exceed the cost it now bears under the per-pupil cost-sharing arrangement. Similarly, the limitations placed upon their ability to offer diverse and specialized educational programs would be more severe. It is precisely because special benefits were anticipated that the voters of both towns approved the formation of the community school district at their respective town meetings of October 23, 1973, and at the same time by overwhelming margins voted to share the CSD expenses between the two towns in proportion to their pupils attending CSD schools.

When the legislature in 1972 enacted section 361 of title 20 (see n. 3 above), it recognized that in most situations an arrangement between towns to share CSD costs on a per-pupil basis would result in each town's bearing a tax burden generally commensurate with the special benefits it derived from the CSD. The legislature committed to the electorate in each town the responsibility of deciding at the time of forming a CSD whether in its particular circumstances such a burden/benefit balance would exist. Before the Stonington-Deer Isle CSD was organized, the voters of Stonington answered that question resoundingly in the affirmative. Nothing in this record suggests that their decision did not represent an accurate appraisal of the benefits to be derived by Stonington from the CSD, as against the tax burdens it assumed. As this court stated in *Kelley v. Brunswick School Dist., supra* 134 Me. at 422, 187 A. at 707, "It may be said here, as [in *Hamilton v. Portland Pier Site Dist., supra*] that for anything shown, benefit and burden are reasonably proportionate." Though the tax burden imposed on them is heavier than the burden imposed on Deer Isle taxpayers, Stonington taxpayers are at the same time receiving greater benefit from the CSD, namely, discharge of the obligation that is constitutionally imposed upon the Town of Stonington to educate the students resident within its limits, regardless of its property tax valuation.

As the trial justice observed, the difference in the tax burden imposed on the remaining taxpayers of the Town of Brunswick was held constitutionally tolerable in *Smyth v. Titcomb, supra.* There is no reason why a similar difference in tax burdens between the towns of Deer Isle and Stonington, resulting from a per-pupil arrangement authorized in general by the legislature and approved specifically by the voters in both towns, should not also be upheld. So long as the requirement of proportionality between benefit and burden is met, application of the special purpose taxation doctrine insulates the per-pupil cost-sharing arrangement from any constitutional infirmity.

The entry in this case must be:

Appeal denied.

Judgment affirmed.

DELAHANTY, GODFREY and NICHOLS, JJ., did not sit.