[No. 15412. In Bank. — July 25, 1893.]

In re Controversy between J. L. WETMORE, Tax-
payer, Appellant, and THE CITY OF OAKLAND
et al., Respondents.

School Law — Erection of School Buildings — Issuance of Municipal Bonds —
Power of Council of Oakland. — The council of the city of Oakland, as dis-
tinguished from its board of education, had power under the act of March
19, 1889, to determine that the public interests and necessities of the city de-
manded the acquisition, construction, and completion of certain designated
school-houses, and that the cost thereof would be too great to be paid out of the
ordinary income and revenue of the city, and to submit the question of issuing
bonds therefor to the voters of the city at a special election, and to issue such
bonds in pursuance of that act after two thirds of the voters at such election
had voted therefor.

Id. — Statutory Construction — Power of Supervisors. — The provisions of sec-
tions 1880-1887 of the Political Code for the issuance by the supervisors of the
county of school-district bonds, whenever the electors of the district shall vote
therefor, do not limit or qualify the power conferred by the act of March 19,
1889, upon an incorporated city to issue its own bonds for the same purpose,
notwithstanding the provisions of section 1575 of the same code, making each
incorporated city a school district.

Appeal from a judgment of the Superior Court of Alameda
County.

The facts are stated in the opinion of the court.

*Edward C. Robinson*, and *E. A. Holman*, for Appellant.

The bonds issued by the legislative body of the city of Oak-
land are void for the reason that said body had no power to
issue them, that power being vested by law in the city board
of education, said city being a "corporate school district."
(*Kennedy* v. *Miller*, 97 Cal. 429; *City of San Diego* v. *Dauer*,
97 Cal. 442; *Hughes* v. *Ewing*, 93 Cal. 414; *Estate of Bulmer*,
59 Cal. 131.)

*Davis & Hill*, and *James A. Johnson*, for Respondents.

The city had power to do just what she did in issuing the
bonds. (Const., art. IX., secs. 1, 6, 9; *Gibson* v. *Board of
Supervisors*, 80 Cal. 363; *People* v. *Hoge*, 55 Cal. 617, 618;
Const., art. XI., secs. 8, 11, 16; Stats. 1889, p. 551, secs. 114,
128, 129, 134–136; Cooley's Constitutional Limitations, p. 153,
and note; *Omnibus R. R. Co.* v. *Baldwin*, 57 Cal. 165; *People*
v. *McFadden*, 81 Cal. 499; 15 Am. St. Rep. 66; *People* v.

*Henshaw,* 76 Cal. 443; *Cody* v. *Murphey,* 89 Cal. 524.) The city having received the money for the bonds and converted it to her own use, she is estopped to deny the validity of her contract if there was *any* power, *any* procedure, *any* way by which she or any board or body acting for her could issue a bond for school purposes — it does not matter whether the right way was followed or not. (Dillon on Municipal Corporations, secs. 418 and note, 421, 422, 422 *a,* 422 *b; Bank of Chillicothe* v. *Mayor etc.,* 7 Ohio, part II., p. 37; 30 Am. Dec. 185; *State* v. *Common Council,* 7 Wis. 688; *Clark* v. *City of Janesville,* 10 Wis. 166; *Kennedy* v. *Sacramento,* 19 Fed. Rep. 580; *Knox Co.* v. *Aspinwall,* 21 How. 542; *De Voss* v. *Richmond,* 18 Gratt. 338; 98 Am. Dec. 651, 665–667; *Sheboygan Co.* v. *Parker,* 3 Wall. 93; *Supervisors* v. *Schenck,* 5 Wall. 776.)

HARRISON, J. — The legislature of this state at its session in 1889 passed an act, approved March 19, 1889, authorizing the incurring of indebtedness for municipal improvements, and issuing bonds therefor by cities, towns, and municipal incorporations (Stats. 1889, p. 399), the first section of which declares that "Any city, town, or municipal corporation incorporated under the laws of this state, may, as hereafter provided, incur indebtedness to pay the cost of any municipal improvement, or for any purpose whatever requiring an expenditure greater than the amount allowed for such improvement by the annual tax levy." By the next section of the act it is provided that whenever the legislative branch of the municipal corporation shall determine that the public interest or necessity demands the acquisition, construction, or completion of any municipal buildings or other municipal improvements, whose cost will be too great to be paid out of the ordinary annual income and revenue of the municipality, it may call an election for the purpose of determining whether bonds of the municipality shall be issued for such improvement, and if the proposition shall receive the vote of two thirds of the voters voting at such election, such bonds may be issued. September 23, 1891, the council of the city of Oakland passed an ordinance by which it declared that the public interest and necessities of the city of Oakland demanded the acquisition, construction, and completion of certain

municipal buildings and improvements in that city for public
school purposes, viz., certain designated school-houses, and that
the cost thereof would be too great to be paid out of the ordi-
nary annual income and revenue of the city; and afterwards
passed an ordinance that the question of issuing bonds therefor
to the amount of four hundred thousand dollars, be submitted
to the voters of the city at a special election to be held for that
purpose.  At that election more than two thirds of the voters
having voted for the issuance of the bonds, suitable ordinances
were passed by the council, and bonds of the city to the amount
of four hundred thousand dollars were issued and sold prior to
January 1, 1893, and the proceeds placed in the city treasury·
In June, 1893, the appellant having challenged the validity of
these proceedings, an agreed case was submitted to the superior
court of Alameda County, under the provisions of section 1138
of the Code of Civil Procedure, for the purpose of having a
determination by that court of the validity of the bonds.  The
superior court adjudged that they were valid obligations of the
city of Oakland, and from its judgment this appeal has been
taken.

The proposition presented by the appellant in support of his
appeal is that the municipality of the "city of Oakland" has no
power to issue its bonds for the construction of school-houses,
for the reason that the management of its schools is vested in a
board of education, and that any bonds to be issued for school
purposes must be authorized by that body.

The city of Oakland is governed by a freeholders' charter,
which was approved by the legislature February 14, 1889.
(Stats. 1889, p. 513.)  Under this charter the legislative power
of the city is vested in a council of eleven members, and the
government of the school department is vested in a board of
education consisting of eleven members.  The board of educa-
tion is by the charter vested with authority to "build school-
houses" upon plans approved by it, but the work of building
the school-houses is to be carried on through the medium of a
board of public works.  It is, moreover, expressly declared in
the charter, section 131, that the board of education "shall not
have power to contract any debts or liabilities in any form
whatsoever against the city, exceeding in any year the income

and revenue provided for the school fund for such year." By section 149 of the charter it is provided that "whenever the council shall determine that the public interest requires the construction or acquisition or completion of any permanent municipal building . . . . the cost of which in addition to the other expenditures of the city will exceed the income and revenue provided for in any one year, they may by ordinance submit a proposition to incur a debt for such purpose, and proceed therein as provided in section 18 of article XI. of the constitution of this state and general law." By this section of the charter the same authority is conferred upon the council to create a bonded indebtedness as is given by the aforesaid act of the legislature, but the act of the legislature prescribes the steps to be taken, and is the "general law" under which it is necessary for the council to proceed in incurring such indebtedness.

The provisions of the act of March 19, 1889, are general in their character, and give to every municipal corporation incorporated under the laws of this state the power to create a bonded indebtedness for any of the purposes authorized by the act. The indebtedness is not to be incurred, nor are the bonds to be issued until after the voters of the municipality have so directed, but as it is the vote of the electors which determines that they shall be issued, it is immaterial to them what officers of the city carry out this vote. The act itself designates the legislative branch of the municipality as the body to determine in the first instance whether the public interest or necessity demands the construction or completion of the building or improvement, and also designates that body as the agency of the corporation through whose acts the indebtedness is to be created and evidenced. There is no particular mode provided by which the council shall ascertain this fact, but in a matter which pertains to the public schools, the fact would naturally be ascertained by direct communicatio., with the board of education, or by a request from that board, and inasmuch as that board has no power to issue the bonds of the city, it is but natural to assume that it would manifest its wishes to the council. The question, however, is not how the council shall ascertain whether the public interest demands the improvement, but whether it has any power to issue the bonds after it has

so determined, irrespective of the mode of ascertaining it. Although the board of education has been entrusted with the management of the schools, and it is the body designated in the charter to build the school-houses, there is nothing inconsistent with this provision for the legislature to designate the council as the body to give inception to the indebtedness and issue the bonds therefor. The power to build or improve the school-houses which is vested in that board is distinct from the power to borrow money with which to build or improve them. The board of education, as such, is forbidden by the charter from incurring any indebtedness beyond the annual income for school purposes, and as the constitution permits such indebtedness by any municipal corporation only after a vote of the electors therefor, it is competent for the legislature to designate the agent or body of the municipal government which shall act for it in carrying out the will of its electors, and for this purpose the legislative branch of that government would most naturally be selected.

That the education of the youth is properly included within the functions of a municipal government cannot be denied. A municipal corporation is but a branch of the state government, and is established for the purpose of aiding the legislature in making provision for the wants and welfare of the public within the territory for which it is organized, and it is for the legislature to determine the extent to which it will confer upon such corporation any power to aid it in the discharge of the obligation which the constitution has imposed upon itself. The constitution has declared (art. IX., sec. 1) that "a general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement." In furtherance of this duty the legislature has made provision in the Political Code for a system of public schools throughout the state, and in the Municipal Government Act, which was enacted in 1883, providing for the organization of municipal corporations, it has included a school department for the first five of the several classes of municipal corporations therein provided for. In each of the freeholders' charters that has been

approved by it an educational department has been established and provision made for education and for the exercise of municipal functions in reference thereto. As school-houses are essential aids in the promotion of education, their erection is but incidental to the maintenance of the schools, and falls as completely within the functions of a municipal government as does the erection of a hospital for its indigent poor, or buildings for its fire engines; and the school-houses when so erected are as fully municipal buildings as are its engine-houses and hospital buildings. (*Danielly* v. *Cabaniss*, 52 Ga. 222; *Horton* v. *Mobile School Commissioners*, 43 Ala. 598.) In *Board of Education* v. *Fowler*, 19 Cal. 24, the validity of a reservation by the Van Ness ordinance of certain lots for school purposes was involved, and the supreme court said: "The school department of the municipality is only a part of its government. A reservation of property for school purposes is not a disposition of it for the benefit of third persons, but a keeping of it for its own purposes. The resolution amounts only to the setting apart of property of the town for a particular town purpose, and in this respect is not different from a similar act, if such had been done, declaring that the plaza should be reserved as a public garden, or a lot for a jail, or a house for the holding of courts. (See also *Board of Education* v. *Martin*, 92 Cal. 209.)

The provisions of sections 1880–1887 of the Political Code for the issuance by the supervisors of the county of school-district bonds, whenever the electors of the district shall vote therefor, to pay for the building of school-houses in the district, do not limit or qualify the power conferred by the act of March 19, 1889, upon an incorporated city to issue its own bonds for the same purpose, notwithstanding the provisions of section 1576 of the same code, making such incorporated city a school district. Each of these acts is a general law upon a subject within legislative power, and if there is any inconsistency between them, that which is later in date must prevail over the earlier act. There is not, however, any inconsistency between the two acts. The bonds authorized by these sections of the Political Code are different obligations from those issued by the municipal corporation under the act of March 19, 1889. A school district has not, like an incorporated city, any financial

officers, nor has it been entrusted with the power of assessment
and taxation which is conferred upon an incorporated city, and
for these reasons, as well as others, the legislature would natu-
rally entrust to the supervisors of the county, as being the body
having the financial supervision of the school district, the func-
tion of issuing and providing for the payment of school-district
bonds; and as by the constitution bonds cannot in any case be
issued, except upon a vote of two thirds of the qualified electors
of the district voting upon the question of their issuance, the
agency by which they might be executed would seem immaterial,
and there would be little likelihood of an issuance being author-
ized to be made for the same purpose by each agency. It is,
however, unnecessary to determine whether the power to issue
bonds conferred by these sections of the Political Code exists
in favor of the school district as a corporation, as well as of the
incorporated city which constitutes the school district, or whether
it has been superseded by the power conferred upon the city, as
the bonds in question are those of the municipal corporation
and not of the school district; but even if it should be conceded
that the power to issue bonds for the same purposes rests in the
supervisors at the instance of the school district, and also in the
city itself, the bonds which are authorized by the Political Code
are to be issued in the corporate name of the school district,
which by section 1575 of that code must be "—— district of
—— county," whereas the bonds in question are those of the
municipality of the city of Oakland, and their validity is to be
determined by the power of the municipal corporation to issue
them.

The question presented in *Kennedy* v. *Miller*, 97 Cal. 429, was
the right of the treasurer of the city of San Diego to demand
from the county treasurer the custody of certain public school
moneys apportioned to the school district of San Diego, which
had been derived from sources outside of the municipality, and
not through any agency of the city, viz., the state school fund
and taxes levied by the supervisors of the county; and it was
held that they were moneys whose custody had been placed by
the legislature with the county treasurer. The power of the
city to raise money within its own territory for school purposes
by tax or otherwise, or to retain the custody, or make the dis-

bursement of any moneys which might be raised from taxes levied by its council, did not arise in that case. On the contrary, we said that "the city is a corporation distinct from that of the school district, even though both are designated by the same name and embrace the same territory. The one derives its authority directly from the legislature through the general law providing for the establishment of schools throughout the state, while the authority of the other is found in the charter under which it is organized"; and it follows that the acts of each corporation are to be measured by the authority under which they are performed, and their validity determined by a comparison with that authority.

We hold, therefore, that the city of Oakland had the power under the provisions of the act of March 19, 1889, to issue the bonds in question, and as it was conceded at the argument that all the provisions of that act had been complied with, the judgment of the superior court is affirmed.

BEATTY, C. J., PATERSON, J., FITZGERALD, J., and DE HAVEN, J., concurred.

Rehearing denied.