[Civ. No. 1765.    Third Appellate District.—June 25, 1918.]

JENNIE MALALEY, Respondent, v. CITY OF MARYS-VILLE (a Municipal Corporation), Appellant.

SCHOOL LAW—SUPERINTENDENT OF SCHOOLS OF CITY OF MARYSVILLE—CHARTER PROVISION NOT REPEALED BY CODE.—Section 1617 of the Political Code, relating to the establishment and maintenance of schools in cities as part of the common school system of the state and which provides that boards of education in city school districts shall have power to employ a city superintendent of schools and fix and order paid his compensation, has not repealed by implication the provision of the charter of the city of Marysville which provides that the county superintendent of schools of Yuba County shall be *ex-officio* superintendent of public schools for the city of Marysville, and which fixes his compensation.

ID.—SCHOOL DISTRICT AND MUNICIPALITY—EXERCISE OF SAME POWERS.—A municipality and a school district, the territorial boundaries of which are the same as those of the city, notwithstanding they are different and separate or distinct corporate entities, may, if the legislature elects to give them the right so to do, exercise precisely the same identical power with respect to matters connected with and calculated to further the interests of the public school system, in so far as such city and school districts are concerned, and merely because the Political Code in its provisions establishing a system of common schools, confers upon the board of education of a city the power to employ a superintendent of city public schools, it does not follow that the provision of a city charter authorizing the county superintendent to perform the duties of city superintendent thereby becomes a dead letter.

APPEAL from a judgment of the Superior Court of Yuba County. K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

W. P. Rich, for Appellant.

W. H. Carlin, for Respondent.

HART, J.—At the general election in November, 1914, plaintiff was elected county superintendent of schools for the county of Yuba and assumed the duties of that office on the fourth day of January, 1915. She also performed the duties of city superintendent of schools of the city of Marysville for twenty months, commencing on said fourth day of January, 1915. She brought the action to recover compensation for her services as such city superintendent, alleging that the salary provided by law to be paid to her by defendant was the sum of fifty dollars per month, and also alleging that that sum was the reasonable value of the services so rendered by her. The trial was before the court, sitting without a jury; findings of fact followed the averments of the complaint and judgment was rendered in favor of plaintiff for one thousand dollars. The appeal is by defendant from said judgment.

The city of Marysville was first incorporated in 1855 (Stats. 1855, p. 23). There were amendments in 1857 (Stats. 1857, p. 40) and in 1866 (Stats. 1865-66, p. 69) and, in 1876 (Stats. 1875-76, p. 149), the city was incorporated. In none of these charters or amendments is there any reference to schools or educational matters.

By the terms of an act of the legislature, approved April 1, 1870 (Stats. 1869-70, p. 583), there was created a board of education for the city of Marysville, of which board the superintendent of public schools of the county was declared to be *ex officio* a member. It was also provided that said county superintendent should be *ex-officio* superintendent of public schools for the city of Marysville. The act specified what duties he should perform and fixed his salary at fifty dollars per month, "payable in the same manner as the salaries of other city officials."

In 1874 (Stats. 1873-74, p. 153) the legislature passed another act regarding said city superintendent and his duties

and all conflicting acts were repealed, but there was no material change from the act of 1870.

Appellant admits that respondent has acted, and is acting, as superintendent of schools of the city of Marysville, and concedes that she "has been, and now is, the *de facto* superintendent of schools of the city of Marysville," but contends that her compensation for rendering services as such superintendent must come from the board of education of said city, or, in other words, from the school fund, which is under the exclusive control of said board, and not from the city of Marysville.

Of course, there can be no *de facto* officer unless there is a *de jure* office, and the concession of the appellant necessarily assumes and further concedes that there is such an office of superintendent of schools of the city of Marysville existing by virtue of some law. And, if the respondent is a *de facto* officer, she has become so by virtue of her office as county superintendent of schools and not by employment by the board of education of the school district. However, as is conceded by the appellant, a *de facto* officer is entitled to receive the compensation prescribed for the services performed in executing the duties of such office.

The question to be decided here must, therefore, as appellant has suggested, depend upon the solution of the further question whether the provisions of the Political Code relating to the establishment and maintenance of schools in cities as part of the common school system of the state have had the effect of repealing those provisions of the Marysville charter providing that the county superintendent of schools of Yuba County shall act as superintendent of schools of said city and fixing the compensation for the services so performed at fifty dollars per month.

The constitution of the state (article IX, section 5) provides: "The legislature shall provide for a system of common schools, by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established."

In pursuance of said section, the legislature has established a system of common schools and has gone into much detail in relation to the organization, government, and maintenance of the system, and has enacted provisions specially applicable

to common schools in cities. (Pol. Code, c. III, title III, part III.)

Section 1617 of said code contains, among others, the following provision: "The powers and duties of . . . boards of education in city school districts are as follows: 1. . . . 2. . . . 3. . . . 4. . . . 5. . . . 6. . . . 7: To employ a . . . city superintendent of schools and when necessary deputy or assistant city superintendent of schools, and to fix and order paid the compensation of the same unless the same be otherwise prescribed by law."

The above is the only provision of the Political Code of the many relating to the common school system and having special application to city common schools which might be said to have the effect of nullifying or repealing the provision of the city charter under the authority of which the respondent purports to exercise the functions of the office of school superintendent of and for the city of Marysville; but we see nothing in the language of the code provision which compels us to hold that it effected a repeal of the charter provision. Under subdivision 7 of the code section named, the board of education has the power to *employ* a superintendent of schools for the city, and it would probably be its duty to do so if the situation required such action. This is as far as the provision goes, and we cannot see why the charter provision cannot stand, even in the face of the power so conferred upon the board of education of the city, as a valid and enforceable part of the charter.

"Repeals by implication are not and have never been favored, and the courts will not so construe the effect of a subsequent statute upon a prior legislative enactment, where there is no express repeal of the prior statute by the later one, unless the two are, as to the vital matters to which they relate, irreconcilably inconsistent with or repugnant to each other." (*Mansfield* v. *Chambers*, 26 Cal. App. 499, 505, [147 Pac. 595].)

There is no inconsistency or repugnancy between the provision of the Political Code conferring upon the boards of education of cities the power to employ a school superintendent and the provision of the charter authorizing the county superintendent to perform the duties of the office for the city. The general purpose of the two provisions is precisely the same, and the result of the existence of the two provisions

is merely the providing of two different sources from which the city may receive the benefit of the services of such an officer. According to the stipulated facts of this case, the board of education of the city of Marysville has never exercised nor attempted to exercise the power conferred upon it by the Political Code to employ a superintendent of schools, and the duties of that office, if, indeed, it is in fact an office under the code until a person is duly employed to discharge the duties of a school superintendent, have always been performed by the county superintendent of schools of Yuba County under the authority of the charter provision above referred to.

It is, of course, to be conceded, as appellant points out, that a school district, the territorial boundaries of which are coterminous with the boundaries of the city in which it is situated, is a corporate entity, separate and distinct from the city as such an entity. It was so held in *Los Angeles School Dist.* v. *Longden,* 148 Cal. 380, [83 Pac. 246]. In that case the governing board of a school district, which, territorially, comprised the city of Los Angeles and certain contiguous outlying lands, inaugurated proceedings looking to the issuance of bonds of the school district for the purpose of erecting a schoolhouse, and after the holding of an election at which the question whether bonds should be issued was submitted to the voters of the district, who, by the requisite number of votes, approved the proposition, the board of trustees of the district duly certified to the board of supervisors of the county all the proceedings had in the premises, as required by section 1884 of the Political Code. The board of supervisors refused to issue the bonds, as provided by the section last mentioned, claiming that the city of Los Angeles, as a municipal corporation, and under its charter and the general laws of the state, was alone vested with the power to issue bonds for the purpose specified. The court, in that case, said, among other things:

"That school districts may in proper cases issue bonds is of course not disputed. It remains to be considered whether this general power to issue bonds which has been granted to school districts has been taken away from this particular school district by force of the charter of the city of Los Angeles. Upon this proposition the contention of respondent is that all matters touching schools within the corporate

limits of a city are 'municipal affairs,' and that as, under
the provisions of section 6 of article XI of the constitution,
the charter of a city is supreme in municipal affairs, the
charter of Los Angeles thus becomes the sole guide, authority,
and power for the issuance of school bonds; that the charter
of Los Angeles denies the power to its board of education
to take the initiatory steps toward the issuance of school
bonds, and confers that power upon its city council; and
that its city council, under the provisions of section 78 of
the charter, draws its power from the provisions of the Gen-
eral Improvement Act of 1901. Herein reliance is placed
upon the language of this court in the case of *Law* v. *San
Francisco,* 144 Cal. 384, [77 Pac. 1014]. There this court
had under consideration the question of the power of the
municipality to issue bonds for the erection of new school-
houses and the improvements of existing schoolhouses, and
the case of *In re Wetmore,* 99 Cal. 151, [33 Pac. 769], was
cited and quoted from, to the effect that as schoolhouses are
essential aids in the promotion of education, their erection
is but incidental to the maintenance of the schools, and falls
as completely within the functions of a municipal govern-
ment as does the erection of a hospital for its indigent poor
or buildings for its fire-engines. It thus may be taken as
decided and settled that a city, as such, may bond itself for
public school purposes, and that this power extends to all
cases where the object is in furtherance, and not in deroga-
tion of or in conflict with the general school system estab-
lished by the state. For in this connection it must be re-
membered, as was said in *Hancock* v. *Board of Education,*
140 Cal. 554, [74 Pac. 44], that the school system of the state
is a matter of general concern, and not a municipal affair."

The court then, after explaining, as first above indicated,
that a school district and a city, although their territorial
boundaries are coterminous, are, nevertheless, distinct and
separate corporate entities, deriving their powers as such
from different sources, proceeds to say: "What, therefore,
the Wetmore case (99 Cal. 146, [33 Pac. 769]) and the Law
case (144 Cal. 384, [77 Pac. 1014]) decided was that the
erection of schoolhouses within the corporate limits of a
municipality was justly to be regarded as a municipal affair,
and that the city, therefore, as such, could create a bonded
indebtedness for such and like purposes, even though power

to do the same thing was, under the general school system of the state, vested in a school district which, while occupying the same territory as that of the city, was still in point of law a distinct corporate entity. It follows, therefore, that the declaration of this court that the issuing of bonds for the building of schoolhouses by a city is a municipal affair constitutes in no sense a negation of the fact that another corporate entity—the school district—may under the general school system of the state, do the same thing for the same purpose.''

The above excerpts are thus brought into this opinion, not because we feel prepared to hold that a superintendent of city public schools, or the matter of the appointment or employment of one, is a municipal affair, but because the principle thereby enunciated and approved and as applied to the situation considered in that case supports the proposition for which the respondent contends here, viz.: That, notwithstanding that they are different and separate or distinct corporate entities, a municipality and a school district, the territorial boundaries of which are the same as those of the city, may, if the legislature elects to give them the right to do so, exercise precisely the same identical power with respect to matters connected with and calculated to further the interests of the public school system, in so far as such city and school districts are concerned, and that therefore, merely because the Political Code, in its provisions establishing a system of common schools, confers upon the board of education of the city of Marysville power to employ a superintendent of city public schools, *non constat* that the provision of the charter of the city of Marysville has become a dead letter; that on the contrary, the provision being one whose object is and has always been in *furtherance* and not in *derogation* of the general school system, cannot be held to be inconsistent or in conflict, but perfectly consistent therewith.

Of course, the provision of the charter with respect to the superintendent of schools for the city need not necessarily be observed—it may be put in abeyance by the exercise by the board of education of the power conferred upon it to employ a superintendent of the city schools, but this does not mean that thus the charter provision would be rendered null and void or be repealed, or that it is inconsistent with

the power conferred upon the board of education with respect to the subject to which it relates.

There was by the attorneys on both sides a sort of stipulation, somewhat vague in meaning and scope, from which it might be inferred that the Marysville school district not only embraces all of the city of Marysville but also a small strip of adjacent territory in which some twenty or thirty persons reside. The city attorney, representing the appellant, argues that the board of education and not the city of Marysville ought to pay the salary of the city superintendent of schools, because in that case the Marysville school district, including the outside territory, would be taxed for the purpose of raising this money to pay the superintendent's salary. ''On the other hand,'' he continues, ''if the salary of the school superintendent of the city of Marysville is paid by the city of Marysville, then the only property taxed to pay her salary will be the property within the corporate limits of the city of Marysville.''

While, if it be true that the Marysville school district covers more territory than that comprehended within the municipal limits of the city of Marysville, it would only be just that those living outside the city limits and owning property situated in the outlying portion of the district should be made to bear their just and proper proportion of the tax necessary to pay the salary of the superintendent of schools of the city, yet the fact that they may not do so is no argument in impeachment of the proposition that the city of Marysville has the right, by virtue of the provisions of its charter, to provide for a superintendent of city schools and his compensation for performing the duties of that office, even though the district may extend territorially beyond the limits of the municipality. Nor, obviously, is it an argument supporting the proposition that the provision of the Political Code, empowering the board of education of Marysville to employ a superintendent of city schools, has had the effect of repealing by implication the provision of the city charter under which the county superintendent is acting, *ex officio,* as city superintendent of schools. The city of Marysville, when making provision in its charter for employing and compensating the county school superintendent to perform like services for the city, undoubtedly considered and determined that so much of the school district as lay within the limits

of the city would be benefited by such services commensurately with the burden thus placed upon its taxpayers. At any rate, the fact that there may be other territory than that of the city proper included within the school district can, in our judgment, have no material bearing upon the question whether the provision of the city charter we are considering is still a valid, existing law, notwithstanding the provision of the Political Code in question.

Our conclusion is that the judgment is correct, and it is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.