LEON H. KELLEY ET ALS.

*vs.*

BRUNSWICK SCHOOL DISTRICT ET ALS.

Cumberland.     Opinion, September 28, 1936.

416

[redacted]

*Spinney & Spinney*, for complainants.
*Verrill, Hale, Booth & Ives*, for respondents.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J., MANSER, J., dissenting.

DUNN, C. J.   In 1935 the Legislature, by special act (P. & S. L., Chap. 70,)—the law became effective July 6—created the Brunswick School District, which, for brevity, will be spoken of as district. The first section of the act, so far as recital is essential, reads as follows:

". . . the inhabitants and territory within the town of Brunswick are hereby created a body politic and corporate under the name of Brunswick School District for the purpose of acquiring property within the said town for school purposes; erecting, enlarging, repairing, equipping and maintaining on said property a school building; and for the purpose of maintaining a secondary school, with the right to lease or let said property to said town; all for the benefit of the inhabitants of said town."

Legislative action was made to depend upon the wishes of the listed voters in the proposed district. The vote of a majority of the electors, in case of an election for the expression of their choice, and an annual meeting of the inhabitants of the town of Brunswick, hereinafter generally called town, being held on the same day, was defined as necessary to decision; whereas if the election was on any day before that of the next town meeting, (such meetings are by statute—R. S., Chap. 5, Sec. 12—in March,) vote of one third of all the voters in the territorial division would suffice. The latter method was followed October 14, 1935.

At the same election, five trustees were chosen by plurality vote.

The legislation empowers borrowing on the faith and credit of the district a sum not in excess of $250,000, to be met, together with interest, from the levying, annually, over a period of years, of taxes upon its polls and estates.

The borrowed money must be expended for the erection and equipment of a building in the district for a secondary school.

When the money shall have been repaid, and every indebtedness of the district discharged, the property whatsoever which it may at that time hold, is, under the terms of the act, to be transferred to the town. The trustees shall then cease to function, the district itself become legally defunct, and "all of the duties, management, care and maintenance shall revert to the school board of the town of Brunswick . . . ." 1935 Laws, *supra.*

The trustees have made part payment of the purchase price of a building site; they purpose to complete that transaction, and, on making loans in supplement to an expected grant from the Federal Public Works Administration, to contract for a high school, the total expense, inclusive of any grant, to be within the sanction of the act.

Ten individual taxpayers, alleging themselves inhabitants of the town, and of the district superimposed upon it, the area of the two being identical, instituted this suit against the district, and, by designation, its trustees, to test the validity of the statute; and for relief by injunction.

Jurisdictional allegations are sufficient. R. S., Chap. 91, Sec. 36, Cl. XIII; *Crabtree* v. *Ayer*, 122 Me., 18, 118 A., 590; *Hamilton* v. *District*, 120 Me., 15, 112 A., 836.

The cause was heard on the bill, answers, replication, and facts agreed on, and reported to the full court.

It is too clear to require argument that, consistent with the threefold division of governmental power, political divisions, other than cities and towns, may be erected for public purposes. There is no dispute in the briefs that the body whose business with regard to such policy it is in the first place, is the Legislature.

The present case is insisted governed by no decision of the court of last resort. Counsel for the complainants say that our cases deal chiefly with incorporations partaking in their incidents the nature of municipalities, whose continuing and definite activities are distinct from those which a single city or town, of like space, is at the same time performing.

*Hamilton* v. *District*, cited before, sustained this situation: Corporate existence of a district comprising the territory and population within two cities, was to continue until the acquirement by that district, not for itself but for another, by issuing and selling bonds, repayable in money to come from taxes, of a location for a public pier.

The case is not authority to support fully the legislation now under consideration. The point on which the decision there depended was that of laying taxes for a purpose not ordinarily municipal, on the theory that, from state-wide use of the pier, special benefit, not disproportionate to burden, would result to the tax district.

For the support and maintenance of schools, school districts embracing fractions of towns were early set up in Massachusetts. *Fourth District* v. *Wood*, 13 Mass., 193. Such districts were continued in Maine. The Act of 1821, Chap. 117, to provide for the education of youth, made each school district a "body corporate." *Whitmore* v. *Hogan*, 22 Me., 564.

School districts were, for certain purposes, considered a form of municipal corporation, within the meaning of that generic term. *Fourth District* v. *Wood*, supra; *Andrews* v. *Estes*, 11 Me., 267. They were abolished in 1893. *School District* v. *Deering*, 91 Me., 516, 40 A., 541.

The districts were auxiliary to towns in effecting an intense belief on the part of the public in the virtue of popular education. The

powers of those districts were commensurate with their duties as part of such a system. They might, among other limited and specific things, hire money on the tax liability of their polls and estates, to build schoolhouses. P. L., 1846, Chap. 208. District debts were not debts of the town. *Gaskill* v. *Dudley*, 6 Met., 546, 552.

The whole territory of the town, whether divided by the Legislature, as it pleased, (*Parker* v. *Titcomb*, 82 Me., 180, 19 A., 162,) or by the town itself, optionally, under legislative warrant, (*Gaskill* v. *Dudley*, supra,) was embraced within different districts. *Fry* v. *School District*, 4 Cush., 250. So far as districts were corporations—quasi-municipal corporations was the usual denomination— they were of the same kind as towns, organized for the same purposes, and charged with duties which would otherwise have devolved upon the town. *Gaskill* v. *Dudley*, supra.

It is objected that the act in question does not incorporate a district separate from the town; that the district must depend on the town, not only for pupils but for teachers. Argument does not do more than suggest that if the question had been debatable, the Legislature, by passing the act, decided the issue. This action is not reviewable in the courts.

Nothing in the act attempts to dissolve the town; to divide it; or to repeal, curtail, or regulate any duty or responsibility resting on it. On the contrary, to do more for the cause of education than the town, in measuring to requirement, is already doing, might be said to be the main purpose of the act. *Cushing* v. *Newburyport*, 10 Met., 508.

Towns must provide funds for the support of public schools within their limits, but it does not follow that the Legislature can do no more for the same general purpose. *Call* v. *Chadbourne*, 46 Me., 206, 222.

Municipal corporations organized for different purposes may include the same territory, as a city and a county, or a school district. McQuillin, Mun. Corp. (2nd ed.), Vol. 1, Sec. 283. Two authorities cannot exercise power in the same area, over the same subject, at the same time. Dillon, Mun. Corp. (4th ed.), Vol. 1, Sec. 184; *Rex* v. *Passmore*, 3 T. R., 199; *Paterson* v. *Society*, 24 N. J. L., 385. But identity of territory, putting one municipal corporation, full or quasi, where another is, is immaterial, if the units

are for distinct and different purposes. *South Park* v. *Chicago, etc., Co.*, 286 Ill., 504, 122 N. E., 89.

A purpose of the act incorporating the Brunswick district is that of maintaining a secondary school. Territory of district and town being alike, the maintenance in the district of such school will necessarily be "for the benefit of the inhabitants of said town." The case is not presented in the phase of leasing the schoolhouse to the town; nor does it involve how money may be had for paying teachers, the act being silent on the topic. Teachers might be paid otherwise than by taxes.

The act provides that title to all the property which the district may eventually have shall vest in the town.

A school district is a public agency or trustee established to carry out the policy of the State to educate its youth. The Legislature may change such agencies, and control and direct what shall be done with school property. The length of time this district may exist, is, because capable of being made certain, definite from the beginning. A municipal corporation owes its existence to the legislative will. *Bank* v. *Rome*, 18 N. Y., 38, 43. The Legislature may, in its discretion, abolish or dissolve such a corporation at any time. 43 C. J., p. 171. When the district is at an end, the town shall, in succession, take the property, impressed with the duty of carrying on the trust. *Town of Barre* v. *School District*, 67 Vt., 108, 30 A., 807; *School District* v. *Concord*, 64 N. H., 235, 9.A., 630; *In re School Committee*, 26 R. I., 164, 58 A., 628.

The property held by school districts for public use is subject to such disposition in the promotion of the objects for which it is held, as the supreme legislative power may see fit to make. *Rawson* v. *Spencer*, 113 Mass., 40.

Over property acquired and held exclusively by an agency of State government for purposes deemed public, the Legislature may exercise control to the extent of requiring the agency, without receiving compensation, to transfer such property to some other governmental agency, to be used for similar purposes, or perhaps for other purposes strictly public in their character. *Mount Hope Cemetery* v. *Boston*, 158 Mass., 509, 33 N. E., 695.

School property is public property, the property of the incor-

porated district and not of the taxpayers residing within it. *Water Company* v. *Wade*, 59 N. J. L., 78, 35 A., 4.

The confiscation or diversion of the property of strictly public corporations is prohibited by both Federal and State constitutions. Cooley, Con. Lim. (7th ed.), Vol. 1, pp. 499-502; *Dartmouth College Case*, 4 Wheat., 518, 694, 4 Law ed., 629. Judge Dillon, in his monumental work, after adverting to the power of the legislature over municipal corporations, states his conclusion to be that while, concerning the property of such corporations, regulative power is broad, yet it is not absolute or unlimited; such property is, as long as the municipality lives, burdened with a trust for its benefit; and, if the corporate entity shall be dissolved, for the benefit of the people of the locality. Dillon, Mun. Corp. (5th ed.), Vol. 1, Page 192, Sec. 112.

A statute cannot be invalidated because it seems to the court to inaugurate an inexpedient policy. All questions as to the expediency of a statute are for the Legislature. This is a line of inquiry which courts cannot pursue in determining the validity of a law.

"Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." *Chicago etc., R. R. Co.* v. *McGuire*, 219 U. S., 549, 55 Law ed., 328.

The departments of government, it has been said, are naturally divided into three classes: the legislative, the law-making; the judicial, the law-expounding; and the executive, the law-enforcing. The boundary lines between them were as distinctly marked as the situation would admit. Each was made sovereign in sphere, but powerless beyond it. They are all agents of the people, and the Constitution their power of attorney. All acts beyond this are nugatory; but within it, binding on all, whether politic or impolitic. *Louisville, etc., R. R. Co.* v. *County Court*, 1 Sneed, 637, 62 Am. Dec., 424, 438.

Complainants stress that the act infringes the Thirty-sixth Amendment to the Constitution of Maine, that taxes upon tangible property "be apportioned and assessed equally, according to the just value thereof."

*Hamilton* v. *District*, supra, is, on the doctrine of *stare decisis*, precedent to the contrary. It may be said here, as there, that for anything shown, benefit and burden are reasonably proportionate.

And finally the act is assailed as having no purpose other than to permit accomplishing, indirectly, what, because of the five per centum limit of present indebtedness organic in our law, (provisos are not of relevancy,) the town of Brunswick could not do directly. Thirty-fourth Amendment, Constitution of Maine.

The constitutional debt-limit provision confines the indebtedness of cities and towns within prescribed bounds. Loose construction should not be allowed to weaken the force or broaden the extent of that provision. *Browne* v. *Boston*, 179 Mass., 321, 60 N. E., 934; *Reynolds* v. *Waterville*, 92 Me., 292, 42 A., 553.

Where some independent board or commission, which, though technically a separate corporation, is only an agency of the town or city, incurs or seeks to incur a debt, the courts ought to look behind fiction to see what the real fact is. *Browne* v. *Boston*, supra; *Reynolds* v. *Waterville*, supra. See, too, Opinion of Justices, 99 Me., 515, 60 A., 85.

Such is the correct rule and principle; but the courts may not, absent express constitutional limitations, entirely deny the power of the Legislature to create, wholly or partly, in town or city limits, different public corporate bodies, and to make clear that their debts are to be regarded as those of independent corporations. *Wilson* v. *Board of Trustees*, 133 Ill., 443, 27 N. E., 203; *Board of Education* v. *Upham*, 357 Ill., 263, 191 N. E., 876; *Kennebec Water District* v. *Waterville*, 96 Me., 234, 52 A., 774; *Augusta* v. *Augusta Water District*, 101 Me., 148, 63 A., 663. The statement in the case latest cited, as to the same territorial coexistence of two public corporations, while *obiter dictum*, is in point.

The Constitution of Maine contains no specific provision that wherever there shall be several political divisions, inclusive of the same territory or parts thereof, invested with power to lay a tax or incur a debt, then the aggregate indebtedness of all the separate

units should be taken, in ascertaining the debt limit of one of them.

The Maine Legislature, with regard to incorporating corporations purely public, is of virtually unlimited power. It has created, to speak only of some, a local police corporation, (*Dyar* v. *Farmington Village Corporation*, 70 Me., 515) ; fire protection corporations, (*Dyar* v. *Farmington Village Corporation*, supra ; *Mayo* v. *Village Fire Company*, 96 Me., 539, 53 A., 62) ; a forestry district, (*Sandy River Plantation* v. *Lewis*, 109 Me., 472, 84 A., 995) ; a bridge district, (*Crabtree* v. *Ayer*, supra) ; water districts, (*Kennebec Water District* v. *Waterville* and *Augusta* v. *Augusta Water District*, both of earlier citation) ; and authorized them to administer public affairs. The Legislature has even incorporated a village corporation enabled, with other prerogatives, to build a hall, part of which it occupies, and part of which it rents. *Camden* v. *Village Corporation*, 77 Me., 530, 1 A., 689.

In *Malaley* v. *Marysville*, 37 Cal. App., 638, 174 P., 367, 369, the Court, quoting from a previous case, says:

> " 'What, therefore, the Wetmore Case and the Law Case decided was that the erection of schoolhouses within the corporated limits of a muncipality was justly to be regarded as a municipal affair, and that the city therefore, as such, could create a bonded indebtedness for such and like purposes, even though power to do the same thing was, under the general school system of the state, vested in a school district which, while occupying the same territory as that of the city, was still in point of law a distinct corporate entity. It follows therefore that the declaration of this court that the issuing of bonds for the building of schoolhouses by a city is a municipal affair constitutes in no sense a negation of the fact that another corporate entity — the school district — may, under the general school system of the state, do the same thing for the same purpose.' "

The case proceeds:

> "That, notwithstanding that they are different and separate or distinct corporate entities, a municipality and a school district, the territorial boundaries of which are the same as

those of the city, may, if a Legislature elects to give them the right to do so, exercise precisely the same identical power with respect to matters connected with and calculated to further the interests of the public school system . . . ."

In Detroit, Michigan, the city and the school district coincide geographically. Each is an independent corporation. *Kuhn* v. *Thompson*, 134 N. W., 722, 726. The Michigan Court, recognizing that there cannot be, over the same territory, at the same time, two legal and effective corporations with the same governmental powers, points out that where the corporations are organized for different purposes, have different rights and duties relating to different matters, they may, and often do, occupy one territory, working in harmony, each within its scope. *Kuhn* v. *Thompson*, supra. See McQuillin, Mun. Corp., *supra*.

*McCurdy* v. *Bloomington*, 194 N. E., 287, holds that a school district and a city with conterminous boundaries are, in the law, apart from each other.

In *People* v. *Bowman*, 247 Ill., 276, 93 N. E., 244, 248, it is said:

"While two municipal corporations cannot have jurisdiction and control, at one time, of the same territory for the same purpose, no constitutional objection exists to the power of the Legislature to authorize the formation of two municipal corporations in the same territory at the same time for different purposes, and to authorize them to co-operate, so far as co-operation may be consistent with, or desirable for, the accomplishment of their respective purposes."

An able annotator thus expresses the result of his examination of the reported cases throughout the country:

"The general rule is that, in applying to constitutional or statutory debt-limit provisions to separate and distinct political units with identical boundaries, exercising different functions, only the indebtedness of the political unit in question can be considered, and the debts of the other independent political units should be excluded." 94 A. L. R., 818.

The annotation collects and discusses, among others, cases from Illinois, Indiana, Kentucky, Maine, Michigan, North Dakota, Pennsylvania, South Dakota, Washington and Wisconsin.

In departure from the general rule, Texas holds that the indebtedness of all the separate coterminous political units must be added together, to find out whether one of them has exceeded its debt limit. *Simmons* v. *Lightfoot*, 105 Tex., 212, 146 S. W., 871. This rule has been necessarily applied in South Carolina, by reason of the language of its constitutional debt-limit provision. *Todd* v. *Laurens*, 48 S. C., 395, 26 S. E., 682.

A legislative act should not be declared unconstitutional unless it is clearly so. *Ulmer* v. *Lime Rock R. R. Co.*, 98 Me., 579, 57 A., 1001.

This Court cannot say that chapter 70 of the Special Laws of 1935 palpably contravenes the Maine Constitution.

On the whole case, which has been argued on both sides with ability and zeal, the complainants' bill is not sustainable.

The mandate should be:

*Bill dismissed, on the merits.*

## DISSENTING OPINION

MANSER, J. With the statement of legal principles contained in the majority opinion, I agree. In undertaking to apply these principles, my mind is compelled to a different conclusion.

The contention of the plaintiff is that the school district created by the act, though technically a separate corporation, is only an agency of the town of Brunswick, and when such district incurs or seeks to incur a debt, the Court ought to look behind fiction to see what the real fact is. This is conceded to be the correct rule and principle, although the majority opinion properly points out that, "Courts may not, absent express constitutional limitations, entirely deny the power of the legislature to create, wholly or partly, in town or city limits, different public corporate bodies, and to make clear that their debts are to be regarded as those of independent corporations."

Another fundamental principle enunciated is that two authorities can not exercise power in the same area, over the same subject, at the same time, although municipal corporations organized for

*different* purposes may include the same territory, as a city or a county, or a school district.

An analytical examination of the act shows that it makes little attempt to give to the district the similitude of corporeal entity other than that of the town itself.

It is stated in the majority opinion that "a purpose of the act incorporating the Brunswick district is that of maintaining a secondary school. Territory of district and town being alike will necessarily be for the benefit of the inhabitants of said town. The case is not presented in the phase of leasing the schoolhouse to the town; nor does it involve how money may be had for paying teachers, the act being silent on the topic. Teachers might be paid otherwise than by taxes."

I am convinced that it is not a purpose of the act that the district should maintain a secondary school.

Sec. 1 provides: "Subject to the provisions of section 7 hereof, the inhabitants and territory within the town of Brunswick are hereby created a body politic and corporate under the name of Brunswick School District for the purpose of acquiring property within the said town for school purposes; erecting, enlarging, repairing, equipping and maintaining on said property a school building; and for the purpose of maintaining a secondary school, with the right to lease or let said property to said town; all for the benefit of the inhabitants of said town."

It is significant to note that the clause upon which emphasis is placed and which is set out separately and distinctly, reads: "And for the purpose of maintaining a secondary school, with the right to lease or let said property to said town." The entire act discloses that the real purpose and the actual grant of power is for the erection and maintenance of a physical structure to be turned over to the town for its use. There is no provision for employment or payment of teachers by the trustees or of any of the usual and necessary incidents connected with the education of youth. It seems hardly an answer to say that the act being silent on the subject of payment of these expenses, the legislature may have intended that in a free public high school for the benefit of all children of eligible age and scholastic attainments in the town of Brunswick the teachers would be paid otherwise than through taxation.

Taken in connection with the other positive provisions of the act, the meaning of the particular clause is clearly shown by reversing the order of the phrases, as follows: "And with the right to lease or let said property to said town for the purpose of maintaining a secondary school."

The district is authorized and indeed is limited to the leasing of the property to the municipality alone, thus enabling the municipality to maintain a secondary school.

The record as presented admits that the town itself by reason of present indebtedness is constitutionally prohibited from borrowing the necessary funds for the building of the school. The charter of the district gives it authority to incur such indebtedness. Is it in fact doing so simply as an agency of the town of Brunswick?

Examination discloses that the town surrenders no function or duty with respect to secondary education, and the district assumes none except the actual building of a school structure and the procurement of funds for the purpose.

Territory of the district and town is coincident. Trustees are elected by the legal voters of the town. The result of the election is declared by the municipal officers. The term of office of the trustees expires at the end of successive municipal years. No trustee is entitled to compensation except the treasurer and his salary is fixed, not by the trustees, but by the board of selectmen of Brunswick. The trustees must make yearly reports to be filed with the municipal officers of the town. After providing for a bond issue come sections of the act relating to the retirement of such bonds. Each year the trustees compute the amount needed and certify the same to the assessors of the town. A tax sufficient to cover the amount is then assessed and committed to the town collector who is given all the powers provided by the general law for the enforcement of collection.

Finally there is a mandatory provision that when the school building has been paid for, the district shall automatically cease to function, the president and treasurer must execute a deed of the property to the town, and all money in the treasury goes to the town treasurer.

The town is undertaking to purchase a school building and to pay for it on the installment plan. It becomes obligated to raise

money by taxation to pay a present debt which is can not lawfully incur.

Taken all together, the case appears to warrant the conclusion reached by Chief Justice Peters in *Reynolds* v. *Waterville*, 92 Me., 292: "The commission as created by the act was naked of all authority excepting in just one respect, and that was as a formal medium through which the city could secure to the bondholders its debt."

BARNES, J., joins in dissent.